IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 9, 2020 Session

## IN RE ELLA H.

**Appeal from the Circuit Court for DeKalb County**
**No. 2018-CV-53     Jonathan L. Young, Judge**

———————————————————

**No. M2020-00639-COA-R3-PT**

———————————————————

In this termination of parental rights case, Appellants Mother and Stepfather appeal the trial court's finding that termination of Father's parental rights was not in the Child's best interest. Appellee Father appeals the trial court's finding that he abandoned the Child by willful failure to visit and willful failure to support. Upon review, we conclude that Father abandoned the Child by willful failure to visit and support. Because the record supports the conclusion that termination of Father's parental rights is in the Child's best interest, we reverse the trial court as to this issue, and we remand for entry of an order terminating Father's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part, Reversed in Part, and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and CARMA DENNIS MCGEE, JJ., joined.

Amanda G. Crowell and Lindsey W. Johnson, Lebanon, Tennessee, for the appellants, Natasha F. and Shaee F.[1]

Mingy Kay Ball, Smithville, Tennessee, for the appellee, Kenneth N.

---

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names to protect their identities.

## MEMORANDUM OPINION[2]

## I. Background

Natasha F. ("Mother") is the biological mother of Ella H. (d/o/b/ June 2015) (the "Child"). When the Child was born, Mother believed Blake H. to be the Child's father based on the timeline of her pregnancy, and he signed the birth certificate making him the putative father. When the Child was a few weeks old, a DNA test revealed that Mr. H. was not the Child's biological father.[3] Thereafter, Mother realized Kenneth N. ("Father" or "Appellee") was the Child's biological father and contacted him regarding same. For the first year of the Child's life, Mother brought the Child to Father's family farm to visit. Father's Aunt, Carla S. ("Aunt Carla") (who was also Mother's family friend), occasionally babysat the Child for Mother and also brought the Child to the family farm to visit a few times. During this year, Father provided Mother some money for medical bills related to the Child's birth. Father also occasionally put money in the Child's diaper bag, but his support was never consistent. Father has not provided any form of support since 2015.

Not long after the Child's birth, Mother began a serious relationship with Shaee F. ("Stepfather," and together with Mother "Appellants"), and the two married in October 2016. After Mother began her relationship with Stepfather, she informed Father that he could continue visits with the Child, but that Mother would not be participating in the visits anymore. As a result, Father only occasionally contacted Mother requesting visitation with the Child. The last time Father spoke with Mother regarding visitation was on November 19, 2016. The last time Father saw the Child was in November 2017, when Aunt Carla brought her to the family farm.

On August 6, 2018, Appellants filed a Petition for Adoption and to Terminate Parental Rights in the Circuit Court for Dekalb County, Tennessee ("trial court"). Appellants sought termination of Father's parental rights on the grounds of: (1) abandonment by willful failure to visit; (2) abandonment by willful failure to support; and (3) for all the grounds listed in Tennessee Code Annotated section 36-1-113(g)(9)(A) concerning putative fathers. The petition also alleged that termination of Father's parental rights was in the Child's best interest. On September 12, 2018, Father filed his answer and counter-petition, asking the trial court to establish his parentage, make a custody

---

[2] Rule 10 of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[3] A default judgment was entered against Mr. H., and the termination of his rights is not a subject of this appeal.

determination, and grant him visitation with the Child.

On December 5, 2019, the trial court heard Appellants' petition to terminate Father's parental rights, and the following witnesses testified: (1) Mother; (2) Stepfather; (3) Father; and (4) Aunt Carla. Several exhibits were entered into evidence including text messages between Mother and Father regarding Father's visitation with the Child. By order of December 13, 2019, the trial court found that Father abandoned the Child by failing to visit and support her.[4] While the trial court found grounds for termination, it also found that terminating Father's parental rights was not in the Child's best interest. Accordingly, the trial court denied the petition to terminate and ordered the parties to mediation. Mother and Stepfather filed motions to alter or amend and to stay mediation, which motions the trial court denied on March 26, 2020. Appellants and Appellee appeal.

## II. Issues

While Appellants list three issues for review, we perceive that their argument encompasses one dispositive issue: whether the trial court erred in finding that terminating Father's parental rights was not in the Child's best interest.

In the posture of Appellee, Kenneth N. raises three issues for review as stated in his brief:

1. Whether the trial court erred when it found clear and convincing evidence that Father abandoned the Child by failure to visit and failure to support.

2. Whether the trial court erred when it found that Father failed to prove as an affirmative defense, by a preponderance of the evidence, that his failure to visit was not willful.

3. Whether the trial court erred when it found that Father failed to prove as an affirmative defense, by a preponderance of the evidence, that his failure to support was not willful.

## III. Standard of Review

The Tennessee Supreme Court has previously explained that:

---

[4] We note that the trial court only relied on abandonment as a ground for termination and failed to make any findings or conclusions regarding Appellants' third ground for termination concerning putative fathers under Tennessee Code Annotated section 36-1-113(g)(9)(A). Neither party raised this as an issue on appeal. Accordingly, as a reviewing court, we will only address the grounds relied upon by the trial court in its order.

A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L.Ed.2d 49 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as parens patriae has a special duty to protect minors . . . .' Tennessee law, thus, upholds the [S]tate's authority as parens patriae when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747, 102 S.Ct. 1388, 71 L. Ed.2d 599 (1982); *In re Angela E.*, 303 S.W.3d at 250.

*In re Carrington H.*, 483 S.W.3d 507, 522-23 (Tenn. 2016) (footnote omitted). In Tennessee, termination of parental rights is governed by statute, which identifies "'situations in which that state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g))). Thus, a party seeking to terminate a parent's rights must prove: (1) the existence of one of the statutory grounds; and (2) that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Considering the fundamental nature of a parent's rights and the serious consequences that stem from termination of those rights, a higher standard of proof is required in determining termination cases. *Santosky*, 455 U.S. at 769. As such, a party must prove statutory grounds and the child's best interest by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W. 3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from evidence[,]" and "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

In termination of parental rights cases, appellate courts review a trial court's factual findings *de novo* and accord these findings a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *In re Carrington H.*, 483 S.W.3d at 523-24 (citing *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010); *In re*

- 4 -

***M.L.P.***, 281 S.W.3d 387, 393 (Tenn. 2009); ***In re A.M.H.***, 215 S.W.3d 793, 809 (Tenn. 2007)).  The Tennessee Supreme Court has explained that:

> The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness.  ***In re M.L.P.***, 281 S.W.3d at 393 (quoting ***In re [A.M.H.]***, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. ***In re Angela E***., 303 S.W.3d at 246.

***In re Carrington H.***, 483 S.W.3d at 524.

## IV. Grounds for Termination

The trial court found, by clear and convincing evidence, that Father abandoned the Child by failure to visit and failure to support.  We begin our analysis with a discussion of the ground of abandonment generally.  In pertinent part, Tennessee Code Annotated section 36-1-113(g) provides:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and nonexclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:
>
> > (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;

Tenn. Code Ann. § 36-1-113(g)(1).  Tennessee Code Annotated section 36-1-102 defines "abandonment," in relevant part, as follows:

> (1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:
>
> > (i) For a period of four (4) consecutive months immediately preceding the filing of a . . . petition to terminate the parental rights of the parent or parents . . . of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents . . . either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child;

***

- 5 -

(D) For purposes of this subdivision (1), "failed to support" or "failed to make reasonable payments toward such child's support" means the failure, for a period of four (4) consecutive months, to provide monetary support or the failure to provide more than token payments toward the support of the child. That the parent had only the means or ability to make small payments is not a defense to failure to support if no payments were made during the relevant four-month period;

(E) For purposes of this subdivision (1), "failed to visit" means the failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation. That the parent had only the means or ability to make very occasional visits is not a defense to failure to visit if no visits were made during the relevant four-month period;

Tenn. Code Ann. § 36-1-102(1)(A)(i), (1)(D), (1)(E).

Prior to 2018, the statutory definition of abandonment placed the burden of proof on the petitioner to show that the parent's failure to visit or failure to support was "willful." However, in 2018, the General Assembly amended the statute to shift the burden of proof to the parent or guardian to show that his or her failure to support or visit was not willful. For cases filed on or after July 1, 2018, Tennessee Code Annotated section 36-1-102(1)(I) now provides that:

For purposes of this subdivision (1), it shall be a defense to abandonment for failure to visit or failure to support that a parent or guardian's failure to visit or support was not willful. The parent or guardian shall bear the burden of proof that the failure to visit or support was not willful. Such defense must be established by a preponderance of evidence. The absence of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure . . . .

Tenn. Code Ann. § 36-1-102(1)(I). Here, Mother and Stepfather filed their petition on August 6, 2018; accordingly, Father had the burden to prove, by a preponderance of the evidence, that his failure to visit or support the Child was not willful.

Concerning willfulness in the context of abandonment for termination of parental rights purposes, this Court has stated:

In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental

- 6 -

or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing. . . .

The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*In re Audrey S.*, 182 S.W.3d 838, 863-64 (Tenn. Ct. App. 2005) (internal citations and footnotes omitted). "Whether a parent failed to visit or support a child is a question of fact. Whether a parent's failure to visit or support constitutes willful abandonment . . . is a question of law." *In re Angela E*., 402 S.W.3d 636, 640 (Tenn. 2013) (citing *In re A.M.H*., 215 S.W.3d at 810). As previously discussed, this Court reviews questions of fact *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *In re Carrington H*., 483 S.W.3d at 523-24. We review questions of law *de novo* with no presumption of correctness. *In re Angela E*., 402 S.W.3d at 640 (citing *In re A.M.H*., 215 S.W.3d at 810). With the foregoing in mind, we turn to address whether Father abandoned the Child.

It is undisputed that Father failed to visit or support the Child within the four months immediately preceding the filing of the petition to terminate his parental rights. By Father's own admission at trial, he has not visited the Child since November 2017, and he has not provided support for the Child since 2015. Therefore, the sole question is whether Father's failure to visit or support the Child was willful. From the record, we conclude that it was.

Concerning visitation, the record shows that Father never made a genuine effort to visit the Child. In 2015, during the first year of the Child's life, Father relied on Mother and Aunt Carla to bring the Child to his family farm for visits. After Mother stopped accompanying the Child on visits, Father took almost no affirmative action to see the Child. For example, in 2016, Father contacted Mother only sporadically concerning visitation. There was no pattern to Father's visitation requests except that they were usually made last minute and at or near holidays, when the Child's plans were already settled. Text messages entered into evidence show that Father texted Mother concerning visitation in May 2016, around Mother's Day, and in June 2016, around Father's Day and the Child's birthday. Regarding Father's Day, it appears Father texted Mother two days before the holiday asking to see the Child. The record shows that Mother and the Child had plans with Mother's family, and the Child was not available to visit with Father. During this text exchange, Mother explained that she wanted Father to establish a consistent visitation schedule with the Child, rather than infrequently seeking visitation around the holidays. Father never replied to this text message.

After the foregoing text exchange, Father did not contact Mother again concerning visitation until late November 2016, just before the Thanksgiving holiday. By this time, Father had not seen the Child in almost a year. Concerning this request for visitation, Mother testified that she told Father that she and the Child already had holiday plans. Mother further testified that she was concerned the Child did not know Father and would be scared to go with him. For this reason, Mother asked Father to wait until the beginning of the new year to have visitation with the Child. Mother testified that she told Father, "If you are still adamant [in the new year] and still wanting to [seek visitation], I would love for us . . . to make a plan." Mother never heard from Father again. As discussed, *supra*, Father's last visit with the Child was in November 2017, when Aunt Carla brought the Child to Father's family farm to visit Father's family, and Father happened to be there.

Although Father argues that Mother thwarted his visitation efforts, it is clear from the record that Father's efforts to visit were at first minimal and eventually ceased entirely. Mother repeatedly explained to Father that she wanted him to have visitation with the Child and asked only that he establish a consistent visitation schedule. It is clear, however, that Father would not commit to this reasonable request, and there is no explanation in the record as to why Father failed to pursue visitation with the Child despite ample opportunity to do so. As such, there is sufficient evidence to show that Father's failure to visit the Child during the four months preceding the filing of the petition to terminate his parental rights was due solely to his own unwillingness to pursue the opportunity. Accordingly, we affirm the trial court's finding that Appellants met their burden to prove the ground of abandonment by failure to visit.

Father's failure to support the Child was also willful. When asked at trial how much support he had paid, Father's response was, "I haven't really. I mean, just here and there, I would give her some money, but it was just we didn't speak really. We didn't see each other and didn't talk[,] and it was just kind of up in the air."[5] By his own testimony, Father's attempts to support the Child were token at best. Tenn. Code Ann. § 36-1-102(1)(B) ("'[T]oken support' means that the support, under the circumstances of the individual case, is insignificant given the parent's means."). Despite his testimony, Father argues that Mother prevented him from supporting the Child, arguing that "he tried on multiple occasions to give Mother money for the support . . . and tried to place [the Child] on a health insurance policy, all of which Mother refused." During her testimony, Mother testified that she refused money from Father on three occasions when he offered her money he had on hand. Mother explained that she refused Father's money on these occasions because she was frustrated with Father's token payments and general unwillingness and inability to consistently support the Child. From our review of the testimony, it would be incorrect to say that Mother thwarted Father's attempts at support because these attempts were sporadic and the funds offered were insignificant and made only when Father felt

---

[5] We note that, in 2015, Father provided some support, which Mother applied to medical bills related to the Child's birth.

compelled. A parent's duty to support his or her child is not a discretionary responsibility. In Tennessee, it is well settled that every parent is presumed to have knowledge of a parent's duty to support his or her minor children regardless of whether a court order to that effect is in place. Tenn. Code Ann. § 36-1-102(1)(H) ("Every parent who is eighteen (18) years of age or older is presumed to have knowledge of a parent's legal obligation to support such parent's child or children[.]").

Concerning the Child's coverage under Father's health insurance policy, the record shows that it was not Father who took the initiative to add the Child as an insured. When asked whether he had anything to do with putting the Child on his policy, Father testified, "I don't recall." Indeed, the record shows that it was Father's stepmother, not Father, who initiated the Child's insurance coverage. From the totality of the circumstances, it is clear that Father has offered help and support for this Child only when it pleases him to do so. His support has been inconsistent at best and completely lacking at worst. There is no indication that Father lacked the means to provide for the Child; the only evidence is that he chose not to provide support in any consistent or significant way. Accordingly, we conclude that there is sufficient evidence that Father's failure to support the Child in the four months preceding the filing of the termination petition was willful. As such, we affirm the trial court's finding that Father abandoned the Child by willful failure to visit and willful failure to support. We now turn to the question of whether termination of Father's parental rights is in the Child's best interest.

## V. Best Interest

When at least one ground for termination of parental rights has been established, the petitioner must then prove, by clear and convincing evidence, that termination of the parent's rights is in the child's best interest. *In re Bernard T.*, 319 S.W.3d at 606 (citing *In re A.M.H.*, 215 S.W.3d at 809). As the Tennessee Supreme Court explained:

> Facts considered in the best interest analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." *In re Kaliyah S.*, [455 S.W.3d 533, 555 (Tenn. 2015)] (citing *In re Audrey S.*, 182 S.W.3d at 861). "After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest[s]." *Id.*

*In re Gabriella D.*, 531 S.W.3d 662, 681-82 (Tenn. 2017).

The Tennessee Legislature has codified certain factors that courts should consider in ascertaining the best interest of the child in a termination of parental rights case. As is relevant to this appeal, these factors include, but are not limited to, the following:

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

***

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i).

As an initial matter, we note that the trial court applied the incorrect statute in its best interest analysis. The statutory factors applicable to best interest in the context of termination of parental rights cases are codified at Tennessee Code Annotated section 36-1-113(i). Here, however, the trial court applied the factors set out at Tennessee Code Annotated section 36-6-106(a), which apply "[i]n a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child." Tenn. Code Ann. § 36-6-106(a). Usually, such misapplication would result in our vacating and remanding the order for the trial court to apply the correct statutory factors. *See **In re Layton W.***, No. M2020-00197-COA-R3-PT, 2020 WL 5944053, at *4 (Tenn. Ct. App. Sept. 2, 2020) ("Because the trial court's conclusions as to the [c]hild's best interests do not satisfy the analysis mandated by statute, we vacate those conclusions and remand the case to the trial court with instructions to address the pertinent best interests factors as they apply to the facts of this case."). Here, however, the trial court's ultimate reasoning concerning the Child's best interest is clear from the findings in its order, and the appellate record is complete such that we may review those findings against the evidence. Moreover, "we are statutorily required to expedite appeals in termination of parental rights cases to the extent consistent with the preservation of the rights of the parties." ***In re Audrey S.***, 182 S.W.3d at 859 n.21 (citing Tenn. Code Ann. § 36-1-124 (b) ("In all cases that are appealed from the decision of a trial court, the appellate court shall, consistent with its rules, expedite the contested termination of parental rights . . . .")); *see also **In re Raylan W.***, No. M2020-00102-COA-R3-PT, 2020 WL 4919797, at *7 (Tenn. Ct. App. Aug. 20, 2020). Furthermore, given the unusual circumstances under which our courts have been required to operate during the current Coronavirus pandemic, remand of this matter would likely cause significant delays to final adjudication. "Accordingly, rather than remanding the case as we would customarily do, we will address the substantive merits of the trial court's conclusion [that termination of

- 10 -

Father's parental rights is not in the Child's best interest]." ***White v. Moody***, 171 S.W.3d 187, 192 (Tenn. Ct. App. 1994).

This Court has noted that the "list [of best interest factors set out at Tennessee Code Annotated section 36-1-113(i)] is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's rights is in the best interest of a child." ***In re M.A.R.***, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. Nov. 21, 2005). Depending on the circumstances of an individual case, the consideration of a single factor or other facts outside the enumerated, statutory factors may dictate the outcome of the best interest analysis. ***In re Audrey S.***, 182 S.W.3d at 877. As explained by this Court:

> Ascertaining a child's best interests . . . does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

***White***, 171 S.W.3d at 194. "When considering these statutory factors, courts must remember that '[t]he child's best interests [are] viewed from the child's, rather than the parent's, perspective.'" ***In re Gabriella D.***, 531 S.W.3d at 681 (citing ***In re Audrey S.***, 182 S.W.3d at 878). "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child. . . ." Tenn. Code Ann. § 36-1-101(d); *see also* ***In re Gabriella D.***, 531 S.W.3d at 681-82. We now turn to address the relevant statutory factors against the record.

Concerning the third factor, whether the parent has maintained regular visitation or contact with the child, Tenn. Code Ann. § 36-1-113(i)(3), the trial court found that Father "admitted that he had not seen the [C]hild in at least a year or more." The trial court further found that Father never "pressed the issue [of visitation] or sought legal help [to establish visitation]." Indeed, as discussed, *supra*, Father rarely asked for visitation with the Child, and he made no effort to establish a routine visitation schedule with her. Father stopped asking for visitation altogether in November 2016, over one-and-a-half years before Mother and Stepfather filed the petition to terminate Father's parental rights.

Father's failure to visit the Child prevented him from establishing a meaningful relationship with her, which is the fourth factor courts may consider when ascertaining whether termination is in the Child's best interest. Tenn. Code Ann. § 36-1-113(i)(4). Although the trial court found that Father "shows some love and affection to the [C]hild," it ultimately concluded that "his lack of visitation has greatly hindered this factor." We agree. In his testimony, Father admitted the Child does not know him to be her father.

Likewise, Mother expressed concern that the Child might be frightened to be alone in Father's custody because she does not know him. The record shows that the last time Father saw the Child was in November 2017, when the Child was only two-and-a-half years old. Given the Child's age at the time of her last interaction with Father, it is very unlikely that she would recognize him, much less that she would have any meaningful relationship with him. This factor weighs in favor of termination.

Concerning the fifth statutory factor, because Father and the Child have no meaningful relationship, a change of caretakers and of the Child's physical environment would likely have a profoundly negative effect on her wellbeing. Tenn. Code Ann. § 36-1-113(i)(5). The trial court found that "[Mother] and [Stepfather] have a safe and proper home for the . . . [C]hild," and "[Mother] and [Stepfather] have created a bond with the minor child. . . ." Indeed, the record is replete with examples of Mother's and Stepfather's positive and loving relationship with the Child. Mother testified that she has been the Child's caretaker since birth, and the Child wants for nothing. The record also shows that Stepfather has been actively involved in the Child's life since the beginning of his relationship with Mother, when the Child was only a few months old, and he has been the Child's primary father figure. Unlike Father, Stepfather has provided the Child with a stable and consistent home, and has ensured that her needs are more than met. As a result, the record demonstrates that the Child is bonded with Stepfather and is well-cared-for and well-adjusted in Mother and Stepfather's home. The record further shows that Mother and Stepfather have a son, the Child's half-brother, with whom the Child has a strong sibling bond. Conversely, the Child, who is now five years old, has no relationship with Father. As this Court has previously explained, when a parent is a stranger to a child, although no proof may be specifically presented at trial that a "change in caretakers would be harmful to the child, common sense dictates that removing a child from the only family she has ever known and placing her with a stranger who has historically chosen to put his own desires ahead of the child's needs would cause harm to the child." *In re Jaydin A.*, No. M2018-02145-COA-R3-PT, 2019 WL 6770494, at \*8 (Tenn. Ct. App. Dec. 12, 2019) (internal citations omitted); *see also In re London B.*, No. M2019-00714-COA-R3-PT, 2020 WL 1867364, at \*12 (Tenn. Ct. App. Apr. 14, 2020).

Concerning the final relevant factor, whether the parent paid child support, Tenn. Code Ann. § 36-1-113(i)(9), the trial court found that "[Father] admitted that it has been at least a year or more since he paid [any] support" and "that any support he paid for the entire life of this child was token at best." This finding is supported by the record. As discussed, *supra*, Father admitted that he gave Mother money "here and there" in the first year of the Child's life, but he has provided no support since 2015.

From our review of the entire record, it is clear that the trial court erred in finding that terminating Father's parental rights was not in the Child's best interest. As discussed in detail above, Father has never parented this Child. He is ostensibly a stranger to her. Father's indifference to his obligation as a parent is further evidenced by his testimony

- 12 -

concerning his relationship with his other child, who is the Child's age. At trial, Father admitted that he does not support this child either. "Often, the lack of a meaningful relationship between a parent and child is the most important factor in determining a child's best interest." *In re London B.*, 2020 WL 1867364, at \*12 (citing *In re Addalyne S.*, 556 S.W.3d 774, 795 (Tenn. Ct. App. 2018), *perm. app. denied* (Tenn. 2018); *In re Jayvien O.*, No. W2015-02268-COA-R3-PT, 2016 WL 3268683, at \*9 (Tenn. Ct. App. June 7, 2016) (affirming the trial court's decision where it found the lack of meaningful relationship the "most important[ ]" factor); *In re Terry S.C.*, No. M2013-02381-COA-R3-PT, 2014 WL 3808911, at \*18 (Tenn. Ct. App. July 31, 2014) ("[P]erhaps most importantly, [the mother] has failed to maintain regular visitation with the children and therefore has no meaningful relationship with them.")). It is clear to this Court that Father has no authentic desire to parent any child. Conversely, the Child is well-settled in Mother and Stepfather's home. By all accounts, Stepfather has assumed the role of father. He has provided for the Child's emotional and material needs. Mother testified that she will consent to Stepfather adopting the Child, and Stepfather testified that it is his intention to adopt her. To delay termination of Father's parental rights would further deprive the Child of the permanency and stability she deserves. Accordingly, we reverse the trial court's finding that termination of Father's parental rights is not in the Child's best interest, and we remand the case to the trial court with instruction to enter an order terminating Father's parental rights so that the adoption may proceed at the earliest date

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's finding that Father abandoned the Child by failure to visit and failure to support. We reverse the trial court's finding that termination of Father's parental rights is not in the Child's best interest. The case is remanded for entry of an order terminating Father's parental rights and for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellee, Kenneth N., for all of which execution may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE

- 13 -